# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TRACY Q.**[1], | Case No. 6:22-cv-692-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Mark A. Manning, WELLS, MANNING, EITENMILLER & TAYLOR, PC, 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Michonne L. Omo, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 6401 Security Blvd., Baltimore, MD, 21235. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Tracy Q. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying her application for Disability Insurance

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Benefits (DIB) under the Social Security Act (Act). For the reasons below, the Court reverses the decision of the administrative law judge (ALJ) and remands for further proceedings.

## STANDARD OF REVIEW

The decision of the administrative law judge (ALJ) is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff applied for DIB on February 20, 2019,[2] alleging an onset date of January 9,

2019. AR 21. Plaintiff's date of birth is January 24, 1967, and she was 51 years old on her

alleged disability onset date. AR 83. Plaintiff alleged that she is unable to work due to post-

traumatic stress disorder (PTSD), cognitive memory deficits, manic depression, bipolar II

disorder, anxiety, peripheral neuropathy, fibromyalgia, stress, obsessive compulsive disorder

(OCD), and migraines. AR 211.

The agency denied Plaintiff's claim both initially and upon reconsideration, and Plaintiff

requested a hearing. AR 109, 115. Plaintiff and her attorney representative appeared before an

ALJ for a telephonic hearing on March 5, 2021. AR 21, 40. The ALJ issued a decision denying

Plaintiff's claim for benefits on April 21, 2021. AR 21-33. Plaintiff requested a review of the

ALJ's decision, AR 183, which the Appeals Council denied. AR 1. The ALJ's decision thus

became the final decision of the Commissioner and Plaintiff timely appealed pursuant to 42

U.S.C § 405(g).

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

---

[2] The ALJ recites Plaintiff's application date as February 20, 2019. Documents in the record consistently reference Plaintiff's filing date as February 20, 2019. *See, e.g.*, AR 69, 82, 92, 100, 198. Plaintiff's application itself, however, states that she contacted the social security office and filed her application on February 21, 2019. AR 187. For purposes of this Opinion and Order, the Court accepts the protective filing date as described by the ALJ, February 20, 2019.

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Keyser*, 648 F.3d at 724-25. Each step is potentially dispositive. 20 C.F.R. § 404.1520(a)(4). If the analysis continues beyond step three, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC).

The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1099; *see Bustamante*, 262 F.3d at 954.

## C.  The ALJ's Decision

As an initial matter for Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status of the Act through June 30, 2024. AR 23. At step one of the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 9, 2019. *Id.*

PAGE 4 – OPINION AND ORDER

At step two, the ALJ found the following severe, medically determinable impairments: obesity, migraines, peripheral neuropathy, fibromyalgia, anxiety disorder, PTSD, bipolar II disorder, cervical spine degenerative disc disease, and chronic pain syndrome. *Id.* At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P. Appendix 1. AR 24. The ALJ then found that Plaintiff has the RFC to perform a wide range of light work, with the following limitations:

> The claimant can lift and/or carry and push and/or pull up to 10 pounds frequently and 20 pounds occasionally. Further, she can sit for up to six hours in an eight-hour workday and stand and/or walk for up to six hours in an eight-hour workday. The claimant can understand, remember, carry out and persist in simple, routine, repetitive tasks, defined as applying a commonsense understanding to carry out detailed but uninvolved instructions, or unskilled work that has a reasoning level of 2 or less. She can make simple work-related decisions and perform work with few if any changes in the workplace. Finally, the claimant cannot perform assembly line-pace work.

AR 27.

At step four, the ALJ found that Plaintiff did not have the ability to perform her past relevant work. AR 32. At step five, the ALJ found Plaintiff had the ability to perform jobs that exist in significant numbers in the national economy, specifically as a cleaner housekeeper, small products assembler, and production assembler. AR 33. The ALJ concluded that Plaintiff was not disabled under the Act from the alleged onset date of January 9, 2019, through April 21, 2021, the date of the ALJ's decision. *Id.*

## DISCUSSION

Plaintiff argues the ALJ erred by (A) improperly rejecting Plaintiff's symptom testimony; (B) improperly rejecting the lay testimony of Plaintiff's boyfriend; and (C) finding persuasive

the medical opinions of state agency consultants William Nesbitt, MD and Lucy Sauer, MD. The Court addresses each argument in turn.

## A.  Plaintiff's subjective symptom testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017).[3] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

---

[3] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the

claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

During her hearing, Plaintiff testified that her last job as a pharmacy technician ended because she struggled learning a new computer system. AR 47. After that job ended, she did not apply for any other type of work because she "physically and mentally could not do it anymore." *Id.* Plaintiff testified she is in constant pain and has "had horrible anxiety most of [her] life." AR 48. Plaintiff stated she has had trouble with her neck and back for years, and typically could "work through" pain, but she sought medical care "when it started getting really bad." AR 53. Plaintiff explained that she does not stand for very long because "pain in [her] ankles and feet is excruciating." AR 57. Plaintiff further stated that she "spend[s] most of [her] days either reclined in [her] chair or laying in [her] bed." AR 54 Plaintiff testified she used to have an active life, including reading books, roller skating, walking on the beach, line dancing, bike riding, going to the gym, and going to the mall. AR 55, 67. She also described more recent activities, including going to dinner with friends and music shows afterwards "a couple times a month," until "the virus hit." AR 51. Now, according to Plaintiff, she spends most of her time napping, watching television, and playing on her phone. AR 54-55.

The ALJ discounted Plaintiff's symptom testimony, making the boilerplate statement that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 29. The ALJ cited Plaintiff's activities of daily living, a history of routine conservative treatment that improved Plaintiff's symptoms, and the lack of support in the objective medical record in support of the ALJ's conclusion.

### 1. Activities of daily living

The ALJ discounted Plaintiff's symptom testimony because her "daily activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." AR 30. Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Molina*, 674 F.3d at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ discounted Plaintiff's testimony because, among other things, she is able to "perform light household chores, prepare simple meals, and do her own weekly shopping." AR 30. These type of minimal activities are the type the Ninth Circuit repeatedly has admonished do not support discounting subjective symptom testimony.

The ALJ, however, also described Plaintiff as having "a vibrant social life during the [alleged disability] period" including "having dinner with friends, going line dancing with a friend, attending her boyfriend's singing gigs regularly, and spending time with her mom, which are activities that are inconsistent with her allegations of physical disability, trouble being in public places and concentration and memory deficits." *Id.* The ALJ noted that "there is no evidence [Plaintiff] would not have otherwise continued [these activities] were it not for the pandemic." AR 26. The ALJ also pointed to evidence that Plaintiff was "lifting 'some very heavy wood rounds' in July 2020, and although she strained her back at the time, she did not think before doing so because she had 'always been very active and strong.'" AR 30-31 (citing AR 715).

Plaintiff argues that these activities are not inconsistent with her testimony because "these things had largely or entirely stopped happening because of her progressive pain," rather than pandemic-related closures. The ALJ, however, identified specific activities that contrasted with Plaintiff's claimed limitations, and provided substantial evidence in support of her conclusion. For example, Plaintiff reported in June 2019 that she was still able to line dance and attend music shows, despite claiming constant pain in her feet and hands and fear of public spaces. AR 250, 254. Although no description of line dancing was provided, it is reasonable to conclude that it involves hands and feet. It also takes place in public, which contradicts Plaintiff's testimony regarding her fear of public places. Additionally, in 2019 Plaintiff described attending four to

eight live-music gigs per month with her boyfriend. AR 251. This evidence in 2019 provides more than a scintilla of evidence supporting the ALJ's conclusion regarding Plaintiff's symptom testimony. Further, although Plaintiff argues that it was her increasing pain in 2020, and not the pandemic, that caused her to stop her activities, it was a rational reading of the record for the ALJ to conclude that it was the pandemic, particularly given Plaintiff's testimony at the hearing. So long as the ALJ's interpretation is rational, even assuming Plaintiff offers a competing rational interpretation, the Court affirms the ALJ's interpretation. *Burch*, 400 F.3d at 679. Therefore, the ALJ did not err in concluding Plaintiff's daily activities conflicted with her symptom testimony and this is a clear and convincing reason to discount her subjective symptom testimony.

### 2.  Routine conservative treatment and improvement with treatment

The ALJ discounted Plaintiff's symptom testimony because she received treatment that was "essentially routine and/or conservative in nature, which demonstrates that the impairments are not as limited as alleged. . . . [A]nd the evidence shows that this conservative therapy provides adequate relief of the alleged symptoms." AR 31. Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 404.1529(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

PAGE 11 – OPINION AND ORDER

Additionally, a claimant's improvement with treatment "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. § 404.1529(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability.").

The ALJ stated that the majority of Plaintiff's treatment consisted of "medication management, home exercise, and physical therapy and very little counseling and the evidence shows that this conservative therapy provides adequate relief of the alleged symptoms." AR 31. In support of this conclusion, the ALJ cited administrative exhibits, which the Court converts to their administrative record pages: AR 214,[4] 279, 346-56, 433, 512-78, 588-652, 653-804, 814-89, and 890-917. The Court, however, finds that the ALJ failed properly to support her conclusion. AR 214 describes medications Plaintiff was prescribed and avers that she was otherwise treated for her conditions. AR 279 is a pain questionnaire wherein Plaintiff states that she is always in pain, and that sitting in her recliner is the only thing that helps with the pain. AR 433 describes a doctor's appointment for Plaintiff's neck pain. The remaining cites are to 399 pages of medical records. It is not a district court's responsibility to "comb the administrative record to find specific conflicts." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)). As such, the

---

[4] There is a scrivener's error in the ALJ's opinion. The ALJ cites exhibit 2E, page 5. There is no page 5 to exhibit 2E. It appears the ALJ meant to cite exhibit 3E, page 5, detailing Plaintiff's treatment, which is AR 214.

ALJ has failed to provide sufficiently specific evidence of conservative or routine medical treatment.

### 3.  Objective medical evidence

The ALJ discounted Plaintiff's symptom testimony, in part, because "the longitudinal record does not document notable objective findings or other evidence throughout the claimant's treatment history that would support the degree of limitation the [Plaintiff] has alleged." AR 29. An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ reviewed the medical record before evaluating Plaintiff's subjective symptom testimony. In discussing Plaintiff's subjective symptom testimony and addressing the objective medical evidence, the ALJ broadly and briefly summarized Plaintiff's mental health records and cited to hundreds of pages of medical records. The ALJ similarly broadly and briefly summarized Plaintiff's physical health records and cited to hundreds of pages of medical records.

"An ALJ's vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion is insufficient for [court] review." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (quotation marks omitted). A court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a clamaint's] pain testimony where . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (emphases in original) (quoting *Brown-Hunter*, 806 F.3d at 494). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination" but must

"specify which testimony she finds not credible." *Brown-Hunter*, 806 F.3d at 489; *see also Lambert*, 980 F.3d at 1278 (stating that "provid[ing] a relatively detailed overview of [a claimant's] medical history . . . 'is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'" (emphasis in original) (quoting *Brown-Hunter*, 806 F.3d at 494)); *Treichler*, 775 F.3d at 1103 (rejecting the argument that because the ALJ "set out his RFC and summarized the evidence supporting his determination" the court could infer "that the ALJ rejected [petitioner's] testimony to the extent it conflicted with that medical evidence").

The ALJ's reliance on the objective medical evidence as a factor is insufficiently supported because the ALJ fails to identify any testimony and link it to any specific medical evidence. Indeed, the only specific medical records cited by the ALJ in this section of her opinion relates to an August 2020 MRI, which supports Plaintiff's claims of pain and decreased range of motion due to multilevel cervical spondylosis. AR 30 (citing AR 766-67, 918-19).

### 4.  Conclusion

Although the ALJ erred in failing to cite specific record evidence in relying on routine conservative treatment that effectively treated Plaintiff's condition and contending that the objective medical evidence failed to support Plaintiff's claimed to limitations, this error was harmless. The ALJ provided a clear and convincing reason, Plaintiff's daily living activities that were inconsistent with her claimed limitations. The ALJ's overall decision can be upheld even if not all of her reasons are affirmed. *See Batson*, 359 F.3d at 1197.

## B.  Lay witness testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment

affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment and "must give reasons that are germane to each witness." *Id.* (quoting *Dodrill*, 12 F.3d at 919). In rejecting lay testimony, however, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle*, 533 F.3d at 1162-63). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117.

The Commissioner argues that under new regulations governing the evaluation of *medical* evidence, an ALJ need not provide any reason for rejecting *lay* witness statements. Subsection (d) of the new regulations provides: "We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section." 20 C.F.R. § 404.1520c(d). Subsections (a) through (c) lay out the new standards for evaluating medical opinion evidence. *Id.* § 404.1520c(a)-(c). Thus, under the new regulations, the ALJ is not required to use the standards for evaluating medical opinion evidence when evaluating lay witness testimony.

The Ninth Circuit has not yet decided whether the new regulations affect the requirement in the Ninth Circuit that an ALJ must give germane reasons for rejecting lay witness testimony. Some courts have concluded that the new regulations may dispense with an ALJ's obligation specifically to address lay witness testimony, including any obligation to articulate germane reasons for disregarding lay testimony. *See, e.g.*, *Evans v. Comm'r of Soc. Sec.*, 2023 WL 3570083, at *9 (E.D. Cal. May 19, 2023) ("Under the new regulations regarding nonmedical statements, the Commissioner is no longer required to articulate 'germane' reasons for discounting a lay witness's testimony."); *Gretchen S. v. Saul*, 2020 WL 6076265, at *8 (D. Or. Oct. 15, 2020) ("[T]here is an argument that the ALJ is no longer required to provide 'arguably germane reasons' for disregarding such statements, as the Ninth Circuit has traditionally required.").[5] The majority of district courts in this circuit, however, conclude that the new regulations have not eliminated an ALJ's obligation to consider and address lay witness testimony. *See, e.g.*, *Christopher M. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 8827678, at *10 (D. Or. Dec. 21, 2023); *Jerald H. v. Comm'r of Soc. Sec.*, 2023 WL 6533477, at *4 (W.D. Wash. Oct. 6, 2023); *Gardner v. Comm'r of Soc. Sec. Admin.*, 2023 WL 6173220, at *6 (D. Ariz. Sept. 21, 2023); *Joseph L. S. v. Kijakazi*, 2023 WL 5611408, at *5 (C.D. Cal. Aug. 30, 2023); *Sharon W. v. Kijakazi*, 2023 WL 246391, at *8 (D. Idaho Jan. 18, 2023).

On the Court's reading, the new regulations do not eliminate an ALJ's obligation to consider and address lay witness testimony. The revised regulations describe how to evaluate

---

[5] The Commissioner relies on a footnote in *Fryer v. Kijakazi*, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022) (unpub) ("Fryer also argued that the ALJ erred by refusing to consider lay witness statements from her husband. It is an open question whether ALJs are still required to consider lay witness evidence under the revised regulations, although it is clear they are no longer required to articulate it in their decisions."). This Court does not rely on unpublished dispositions of the Ninth Circuit.

*medical* opinion testimony. The fact that the regulations state that nonmedical opinion testimony *is not held* to the same standard as medical opinion testimony says nothing about the standard to which nonmedical opinion testimony *is held*. Thus, the new regulations are not "clearly irreconcilable" with existing caselaw and are insufficient to overrule binding Ninth Circuit precedent that an ALJ must comment on lay witness testimony and provide germane reasons to discount it. *See Woods v. Kijakazi*, 32 F.4th 785, 790 (9th Cir. 2022) ("[Ninth Circuit] precedent controls unless its reasoning or theory is clearly irreconcilable with the reasoning or theory of intervening higher authority, which in this case is the agency's updated regulations."). Further, "[t]he requirement that an ALJ consider lay witness testimony comes from other regulations, regulations that remain intact after the 2017 amendment." *Joseph L.*, 2023 WL 5611408, at *5, (citing 20 C.F.R. §§ 416.913(a), 416.929(a)).[6] The Ninth Circuit's requirement from the line of cases described above that an ALJ must provide germane reasons to discount lay witness testimony finds support in this regulatory requirement, which still remains. *See, e.g.*, *Dodrill*, 12 F.3d at 918-19 ("Disregard of [lay witness testimony] violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. 20 C.F.R. § 404.1513(e)(2)." (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).[7] Thus, the contention "[t]hat an ALJ can disregard or reject relevant lay evidence for no reason is inconsistent with the Commissioner's obligation to consider such evidence[] and the rule [that] the ALJ must provide some rationale in order for the Court to

---

[6] The court in *Joseph L.* cited the regulatory provisions applicable to Title XVI claims—the same regulatory provisions applicable to Title II claims are in 20 C.F.R. §§ 404.1513, 404.1529.

[7] The requirement that the Commissioner consider nonmedical evidence in adjudicating Title II claims is now in 20 C.F.R. § 404.1513(a)(4).

meaningfully determine whether the ALJ's conclusions are free of legal error and supported by substantial evidence." *Gary J.D. v. Comm'r of Soc. Sec.*, 2023 WL 5346621, at \*14 (W.D. Wash. Aug. 21, 2023).

In this case, the ALJ failed to credit or reject the lay testimony in question. Indeed, the ALJ's cursory statement addressing the lay testimony notes only that lay testimony exists in the record. The ALJ stated

> judicial notice is taken that third party statement have been submitted on behalf of [Plaintiff]. Specifically, Dennis J. Calvino, [Plaintiff's] boyfriend provided Third Party Function Reports in July 2019 and March 2020. The reports have been reviewed and considered in relation to the remainder of the record.

AR 31 (record citations omitted).

It was error for the ALJ not to provide a germane reason to discount the lay witness testimony. This error, however, was harmless because the lay witness did not describe limitations different from those descried by Plaintiff. Because the Court has affirmed the ALJ's discounting Plaintiff's subjective symptom testimony, that reason applies to the lay witness testimony. *Molina*, 674 F.3d at 1117.

## C.  Medical opinion evidence

Plaintiff filed her application for benefits on February 20, 2019. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 404.1520c governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these revised regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b). These regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods*, 32 F.4th at 792 ("The revised social security regulations are clearly

irreconcilable with our caselaw according special deference to the opinions of treating and

examining physicians on account of their relationship with the claimant."). Under these

regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions

in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is

determined by whether the medical source presents explanations and objective medical evidence

to support his or her opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency is determined by how

consistent the opinion is with evidence from other medical and nonmedical sources. 20 C.F.R.

§ 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking

to factors such as the length of the treatment relationship, the frequency of the claimant's

examinations, the purpose of the treatment relationship, the extent of the treatment relationship,

and whether there is an examining relationship. 20 C.F.R. § 404.1520c(c)(3). An ALJ is not,

however, required to explain how he or she considered these secondary medical factors, unless

he or she finds that two or more medical opinions about the same issue are equally well-

supported and consistent with the record but not identical. 20 C.F.R. §§ 404.1520c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the

medical opinions" and "explain how [they] considered the supportability and consistency

factors." 20 C.F.R. § 404.1520c(b). The Court must, moreover, continue to consider whether the

ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*,

32 F.4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for

rejecting a treating or examining doctor's opinion, which stems from the special weight given to

such opinions is likewise incompatible with the revised regulations. . . . Even under the new

regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or

inconsistent without providing an explanation supported by substantial evidence." (citation omitted)).

The ALJ found the opinions of State agency medical consultants William Nisbet, MD and Lucy Sauer, MD persuasive because "the conclusion that the [Plaintiff's] physical impairment[s] result in exertional limitations consistent with a full range of light work is supported by the evidence cited and consistent with the objective evidence of record." AR 31. Mirroring language used in summarizing Plaintiff's physical condition in evaluating whether the objective medical record supported Plaintiff's subjective symptom testimony, the ALJ stated "[s]pecifically, physical examinations most often show steady gait, normal pulses, no tenderness, no edema, and other essentially normal findings and a general lack of reported positive findings to corroborate a need for significant functional limitations." AR 31. In support, the ALJ cited nearly 400 pages of the medical record.

The ALJ's general citation to a large portion of the medical record is not sufficiently specific enough for the Court to review. "[A]lthough we will not fault the agency merely for explaining its decision with less than ideal clarity, we still demand that the agency set forth the reasoning behind its decisions in a way that allows meaningful review." *Brown-Hunter*, 806 F.3d at 492 (citing *Treichler*, 775 F.3d at 1099). Plaintiff argues the ALJ further erred in conducting the supportability and consistency analysis because Drs. Nisbet and Sauers only reviewed records through May 22, 2019. Thus, their opinions did not include Plaintiff's cervical spine imagery conducted in July and August of 2020, and were therefore not consistent with the whole record. Nor did the ALJ provide any explanation as to how she considered these inconsistencies in making her determination. Plaintiff argues this is particularly problematic given Plaintiff's degenerative condition that has worsened over time. The Court agrees that the ALJ's failure to

explain how she considered the inconsistencies between the agency doctors' opinions and the

medical evidence of the record also was reversible legal error.

**D.  Remand**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to

remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation

omitted). Although a court should generally remand to the agency for additional investigation or

explanation, a court has discretion to remand for immediate payment of benefits. *Treichler*, 775

F.3d at 1099-100. The issue turns on the utility of further proceedings. A court may not award

benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been

improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security

Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this

Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error

and then reviews the record as a whole to determine whether the record is fully developed, the

record is free from conflicts and ambiguities, and there is any useful purpose in further

proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has

been fully developed and there are no outstanding issues left to be resolved does the district court

consider whether the ALJ would be required to find the claimant disabled on remand if the

improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its

discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however,

and is not required to credit statements as true merely because the ALJ made a legal error. *Id.*

at 408.

The ALJ erred in her evaluation of the medical opinion evidence. Remand for further

proceedings is appropriate, however, because there are still conflicts and ambiguities in the

PAGE 21 – OPINION AND ORDER

record. On remand, the ALJ must provide substantial evidence supporting her evaluation of the medical opinions of Drs. Nisbet and Sauer, and explain how those opinions are supportable and consistent with the record as a whole given their timing and the later medical records.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 21st day of February, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge